**Mary Ellen KELLEY, Appellant,**

v.

**SAFEWAY STORES, INC., Appellee.**

**No. 14841.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 10, 1959.

Decided May 28, 1959.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Joseph Zitomer, Silver Spring, Md., for appellant.

·Mr. Frank F. Roberson, Washington, D. C., with whom Mr. Charles C. Abeles, Washington, D. C., was on the brief, for appellee.

Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and FAHY, Circuit Judges.

Mr. Justice BURTON.

This is an appeal arising from an action brought by Mrs. Kelley in the United States District Court for the District of Columbia to recover damages for personal injuries suffered by her in Wheaton, Maryland, on the premises of the defendant, Safeway Stores, Inc. Mrs. Kelley is a citizen of the District of Columbia. Safeway Stores, Inc., is a Maryland corporation doing business in Maryland and in the District. Mrs. Kelley claims that her damages, amounting to $100,-000, were caused by the negligence of Safeway Stores on May 24, 1957, in the manner hereafter described. At the conclusion of plaintiff's case, the trial court directed a verdict for defendant on the ground that (1) there was not sufficient evidence of defendant's negligence to sustain a verdict for plaintiff, and (2) that plaintiff was guilty of contributory negligence as a matter of law. Judgment was entered accordingly, and Mrs. Kelley has appealed to this Court. For the reasons hereafter stated, we hold that the judgment should be vacated and the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

case remanded to the District Court for proceedings consistent with this opinion.

The facts, appearing from stipulations and from the witnesses called on behalf of plaintiff, are as follows: On May 24, 1957, between 8 and 9 p. m., Mrs. Kelley, who was then 79 years old and in good health, went shopping with her daughter and six-year-old grandson at appellee's store in Wheaton. Upon leaving the store at five minutes before the 9 o'clock closing time, the three of them walked toward the store's parking lot through a commonly used passageway about seven feet wide. As they reached the corner of the store building, they were suddenly confronted, at a distance of not more than four feet, by a Safeway employee pushing a number of shopping carts combined into a train eight or ten feet long. He was returning the carts, in the course of his employment, from the parking lot to the store. Mrs. Kelley testified: " * * * I saw these carts coming at me so terribly fast. I was afraid that they were going to hit me, and I stepped aside and hit my toe against the curbing." This caused her to fall in such a manner

that she dislocated her thumb, broke her leg and suffered other injuries. She was taken to the Washington Sanitarium where she received treatment but there was evidence that the injuries have resulted in a permanent partial disability.

The primary negligence charged against appellee is that its employee, who was pushing the train of shopping carts, pushed it with such speed toward the seven-foot-wide passageway as to cause Mrs. Kelley and her daughter, with good reason, to fear that the train would hit them. Mrs. Kelley, her daughter and grandson were in the passageway at the time and each stepped aside quickly in order to avoid the threatened collision. In stepping aside, Mrs. Kelley's foot struck a curbstone in such a manner that she fell and suffered the serious injuries for which she is suing. The only testimony before us as to these circumstances is that of Mrs. Kelley and her daughter. Their credibility has not been attacked and most of their material statements on the subject are set forth in the margin of this opinion.[1]

1. Mrs. Mary Ellen Kelley (on Direct Examination)
"A. * * * As we reached the driveway, the pavement that goes into the driveway, I saw this chain of carts coming at me so quickly, and it frightened me so that I stepped aside and stubbed my toe against the curbing or something and fell over."
"A. * * * we got to the end of the building and I saw these carts coming at me so terribly fast. I was afraid that they were going to hit me, and I stepped aside and hit my toe against the curbing. * * *
"Q. Now, when you first saw the carts, how far away was the lead cart from you? A. Oh, very close to me. I wouldn't say more than four feet."
"Q. Did you notice the man pushing the carts? A. No, I just saw somebody there. I just saw the top, but I was so busy watching the carts that were coming so fast on me, that is all I looked at. I just watched those."
"Q. Could you describe for us how fast this man was pushing the train of carts? A. I don't know how fast he was going. I know it seemed awfully fast, and I was so afraid he was going

to hit me. I was so frightened and I thought of nothing else but getting out of his way."
(On Cross Examination)
"Q. When you got down here toward the corner of the building you could see this man coming along pushing the carts, couldn't you? A. Yes, I saw him coming just as I got to that opening, and he was coming so fast I was afraid he was going to hit me."
"Q. Mrs. Kelley, had the man passed you at the time you fell over the curbing? A. Oh, no, he was just coming right toward me."
(On Redirect Examination)
"Q. I understood you to testify earlier, in response to one of the questions Mr. Roberson put to you, that the man had passed you when you hit the ground. A. I don't know. I was so frightened, and I stepped aside just to get away from that rush of carts. He was rushing them and after that I don't remember. I was in too much pain."
Mrs. Catherine O'Connor, Appellant's Daughter (on Direct Examination)
"Q. As you came to the parking lot tell us what happened. A. Well, as we came—we stayed close to the side of the

Although their testimony does not conclusively establish the store's negligence, it does provide ample basis on which a jury might, in the light of all the circumstances, reasonably conclude that an employee of the store, in the course of his employment, pushed the train of carts with such speed as to threaten the safety of Mrs. Kelley, and thus failed to use the care owed by the store to its customers.

If Mrs. Kelley had not attempted to avoid the collision with the shopping carts and had been hit by them, there would have been a clear case for the jury to determine the issue of the store's negligence in causing the collision. Whether Mrs. Kelley's fall was caused by physical impact with the shopping carts or by her instinctive and natural movement to avoid the apparently impending collision, the negligence of the store is equally a question for the jury. Sears, Roebuck & Co. v. George, 1941, 75 U.S. App.D.C. 73, 125 F.2d 739; Jennings v. Philadelphia, B. & W. R. Co., 1907, 29 App.D.C. 219; Washington & G. R. Co. v. Hickey, 1895, 5 App.D.C. 436, affirmed 1897, 166 U.S. 521, 17 S.Ct. 661, 41 L.Ed. 1101; Chalmers v. Great Atlantic & Pacific Tea Co., 1937, 172 Md. 552, 192 A. 419.

The defendant company, appellee herein, however, claims that even though it may have been negligent in the handling of its train of shopping carts, Mrs. Kelley was barred from recovery because her conduct amounted to contributory negligence as a matter of law. The testimony as to Mrs. Kelley's conduct in attempting to escape injury from a collision with the shopping carts was sufficient to support a finding that she had acted spontaneously in response to a normal impulse without opportunity for reflection. That such a response does not amount to contributory negligence as a matter of law is illustrated in several decisions. Chief Judge Soboloff of the Maryland Court of Appeals, in reversing a directed verdict for the defendant, said: "Acts which, if done in calm deliberateness, might be judged negligent, may yet not be so regarded where done spontaneously in response to a normal impulse without adequate opportunity for reflection." Burkert v. Smith, 1953, 201 Md. 452, 458, 94 A.2d 460, 462. "An act done in the presence or under a reasonably well-founded apprehension of impending danger, for the purpose of escaping therefrom, may not, in the contemplation of law, constitute contributory negligence, though it may in fact have contributed to the production of the

store there because that sidewalk slants a little and as we came to the end of the building there, my car was parked over on the next section and the boy had pushed my cart across and as I came around the side of the building there the Safeway attendant was pushing a long line of carts and he was pushing them quite fast. I stepped in and stepped over this curbing, and as I stepped over the curbing, which I had done— I just knew it was there—I had stepped over the curbing. As I stepped over, I thought, 'Well, my mother might not know that is there, and she might fall.' When I said, 'Look out' she had started falling. * * *

"Q. Where was the man who was pushing these carts at that time? Will you describe that for us? A. Well, he was just coming down the lot right beside me and he was—there is an opening there and he was coming through that opening and it is narrow so, of course,

we couldn't all get through there at the same time, so naturally I stepped to the side here and over this curb."

"Q. Where were you with respect to the corner of the building shown in Exhibit 3 when you first observed this attendant pushing the train of carts? A. Well, you couldn't see him unless you were right on the corner there."

"Q. Can you estimate for us the length of the train of carts that the attendant was pushing? A. I would say eight or ten feet.

"Q. Can you tell us the manner in which this attendant was pushing them? A. He was pushing them quite fast at that time of the evening. They usually do, but in this case he was pushing them fast. He wasn't running but he was pushing them fast.

"Q. And what time was this? A. Just before 9:00. Just before the store closed."

injury complained of." Jennings v. Philadelphia, B. & W. R. Co., supra, 29 App. D.C. at page 236. See also Wilmer v. Rittenhouse, 4 Cir., 1953, 209 F.2d 554, 556; Ward v. District of Columbia, 1905, 24 App.D.C. 524, 531–532; Washington & G. R. Co. v. Hickey, 5 App.D.C. 436, 471.

Under the circumstances of this case we hold that the trial court did not err in excluding appellant's expert witness or in sustaining appellee's objections to appellant's interrogatories. Likewise, we agree with the trial court that appellee's maintenance of the curb was not shown to constitute actionable negligence.

For the reasons indicated above, the judgment of the District Court is vacated and the case remanded to it for further proceedings consistent with this opinion.

Vacated and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.