Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2019 08:07 AM CDT

- 156 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

Ross A. Pantano and Karyl L. Einerson, as Copersonal
Representatives of the Estates of Arlene L. Pantano
and Anthony R. Pantano, appellees and
cross-appellants, v. American Blue Ribbon
Holdings, LLC, doing business as Village Inn,
appellant and cross-appellee, and Francis J.
Kucirek, as Trustee of the Kucirek Living
Trust, and Pamela K. Kucirek, as Trustee
of the Kucirek Living Trust, appellees.

___ N.W.2d ___

Filed May 17, 2019.    No. S-18-815.

1. **Verdicts: Appeal and Error.** When reviewing a jury verdict, an appellate court considers the evidence and resolves evidentiary conflicts in favor of the successful party.
2. **Verdicts: Juries: Appeal and Error.** A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.
3. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.
4. **Rules of Evidence: Hearsay.** An excited utterance does not have to be contemporaneous with the exciting event. It may be subsequent to the event if there was not time for the exciting influence to lose its sway.
5. ____: ____. The true test of an excited utterance is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event.

- 157 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

6. ____: ____. Relevant facts to determine whether a statement is an excited utterance include the declarant's manifestation of stress and the declarant's physical condition.

7. **Trial: Evidence: Jury Instructions.** An error in the admission of evidence may be cured by an instruction from the court.

8. **Pretrial Procedure: Pleadings: Evidence.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.

9. **Trial: Pleadings: Evidence: Appeal and Error.** It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

10. **Summary Judgment: Final Orders: Appeal and Error.** The denial of a motion for summary judgment is not a final order reviewable on appeal.

11. **Negligence: Proof.** Establishing that an accident has occurred does not prove a case of negligence.

12. **Negligence: Evidence: Presumptions: Proof.** Negligence is not presumed and must be proved by evidence, direct or circumstantial.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed as modified.

Stephen G. Olson II and Andrea A. Montoya, of Engles, Ketcham, Olson & Keith, P.C., for appellant.

John M. Lingelbach, Minja Herian, and Casandra M. Langstaff, of Koley Jessen, P.C., L.L.O., for appellees Ross A. Pantano and Karyl L. Einerson.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

INTRODUCTION

Following trial, a jury entered a verdict in favor of the estate of Arlene L. Pantano for $245,000 and in favor of the estate of Anthony R. Pantano for $15,000, but found that Arlene was 25 percent negligent. Accordingly, the district court entered a judgment for the estates in the amount of

- 158 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

$195,000. American Blue Ribbon Holdings, LLC (American Blue Ribbon), appeals. We affirm as modified.

## FACTUAL BACKGROUND

Arlene and her husband, Anthony, filed suit against American Blue Ribbon on October 22, 2015. The suit alleged damages for injuries and loss of consortium suffered when Arlene fell at a Village Inn restaurant owned by American Blue Ribbon. Arlene alleged that she suffered a broken hip when she tripped on an entryway rug and fell near the entrance of the restaurant.

Arlene died of natural causes on July 19, 2016. Anthony had died approximately 4 months earlier, on March 26. This lawsuit was revived in the names of the copersonal representatives of Arlene's and Anthony's estates (the estates).

A jury trial was held in June 2018. The jury found for the estates in the total amount of $260,000, but found Arlene was 25 percent negligent in the cause of her fall. The district court entered judgment in favor of the estates for $195,000. American Blue Ribbon appealed.

At trial, Arlene's children, Ross A. Pantano, Karyl L. Einerson (Karyl), and Marilou DiPrima (Marilou), were all permitted to testify, over American Blue Ribbon's hearsay objection, that Arlene told them that she had tripped on the entryway rug at the restaurant and fell, injuring her hip. In addition, evidence was adduced as to Arlene's medical bills, along with testimony that American Blue Ribbon had not paid those bills. Further details of evidence offered will be discussed as appropriate.

## ASSIGNMENTS OF ERROR

On appeal, American Blue Ribbon assigns that the district court erred in (1) denying its motions in limine; (2) overruling its hearsay objections as to the testimony of Ross, Karyl, and Marilou; (3) admitting evidence that American Blue Ribbon offered to pay, and then did not pay, medical bills incurred by Arlene; (4) denying its motion for summary judgment;

- 159 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

(5) denying its motion for directed verdict; (6) denying its motion for judgment notwithstanding the verdict; and (7) denying its motion for new trial.

On cross-appeal, the estates assign that the district court erred in (1) overruling their motion to strike American Blue Ribbon's comparative negligence affirmative defense, (2) instructing the jury as to the comparative negligence affirmative defense, and (3) providing a jury verdict form incorporating comparative negligence.

## STANDARD OF REVIEW

[1,2] When reviewing a jury verdict, an appellate court considers the evidence and resolves evidentiary conflicts in favor of the successful party.[1] A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.[2]

[3] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[3]

## ANALYSIS

The primary issues on appeal in this case are (1) whether statements made by Arlene and Anthony at the time of Arlene's fall were admissible under the so-called excited utterance exception to the prohibition against hearsay[4]; (2) whether

---

[1] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[2] *Id.*

[3] *TransCanada Keystone Pipeline v. Nicholas Family*, 299 Neb. 276, 908 N.W.2d 60 (2018).

[4] See Neb. Rev. Stat. § 27-803(1) (Reissue 2016).

- 160 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

the admission into evidence of a statement of a Village Inn employee suggesting that American Blue Ribbon would pay Arlene's medical bills, along with testimony that American Blue Ribbon did not pay those bills, was prejudicial; and (3) whether the district court erred in instructing the jury with regard to American Blue Ribbon's affirmative defense of comparative negligence.

*Excited Utterance.*

American Blue Ribbon assigns on appeal that the district court erred in admitting Arlene's statement that she fell on the entryway rug, because that statement was hearsay and did not fall within the excited utterance exception to the hearsay rule. Specifically, American Blue Ribbon contends that Arlene's statement did not relate to a "startling event"[5]; that the statement was not made under the "stress" of the event[6]; and that, in any case, the statement was unreliable because Arlene had dementia. In addition, American Blue Ribbon argues that the estates did not establish that there was a defect in the entryway rug that would allow Ross' testimony regarding Arlene's statement to be considered reliable.

Section 27-803 provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule." For a statement to qualify as an excited utterance under § 27-803(1), the following criteria must be established: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant under the stress of the event.[7]

[4-6] An excited utterance does not have to be contemporaneous with the exciting event. It may be subsequent to the

---

[5] *Id.*

[6] *Id.*

[7] *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

event if there was not time for the exciting influence to lose its sway.[8] The true test is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event.[9] "Relevant facts include the declarant's manifestation of stress, such as '"yelling,"' and the declarant's physical condition."[10]

Arlene's statements to her children regarding the cause of her injury fall within the excited utterance exception. Ross testified that Arlene, who was 90 years old at the time, was upset, crying, and in obvious pain after the fall. The evidence showed that Arlene had fractured her hip during the incident. Anthony was pacing and obviously distressed. Thus, when considered as to this declarant, the fall would be a startling event. And Arlene's statement that she tripped over the entryway rug was related to that startling event.

Furthermore, Arlene's statement to Ross that she had tripped over the entryway rug was made at the restaurant shortly after her fall and prior to her being transported to the hospital. Arlene's statements to Karyl and Marilou were made within "minutes" of Arlene's transport to the hospital. Both Karyl and Marilou testified that their mother was upset and in pain. Marilou testified that Arlene told her that she tripped on the entryway rug as she entered the restaurant and that Arlene indicated with her hands an irregularity with the rug that Marilou described to Arlene as the rug's having been buckled.

Upon our de novo review, we conclude that Arlene was still under the influence of the startling event at the time she made the statements to Ross, Karyl, and Marilou.

And we find no merit to American Blue Ribbon's assertion that the fact that Arlene had been diagnosed with dementia

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at 929, 906 N.W.2d at 325.

- 162 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

affected the admissibility of her statements as excited utterances. American Blue Ribbon is correct that the touchstone of the excited utterance exception is trustworthiness. But a person suffering from dementia is still able to experience a startling event and react to that event accordingly. American Blue Ribbon cited to no authority and offered no evidence to suggest otherwise. A reaction to a startling event made under the stress of that event is reflexive and unthinking; it is not the product of conscious thought.[11] Such a statement might not be accurate, and any shock might have interfered with the declarant's observation or memory,[12] but that does not prevent the statement from being an excited utterance. That Arlene was diagnosed with dementia was evidence produced at trial, but that fact does not affect the admissibility of her statement as an excited utterance. There is no merit to this assertion.

### Admission of Offer to Pay Medical Expenses.

American Blue Ribbon also argues that the district court erred in allowing Ross to testify that a Village Inn employee told him that Arlene's medical bills would be paid by the restaurant and in admitting Ross' testimony that American Blue Ribbon and Village Inn had not, in fact, paid those bills.

Neb. Rev. Stat. § 27-409 (Reissue 2016) provides that "[e]vidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury." As American Blue Ribbon observes, Ross was permitted, in contravention of this statute, to testify that a Village Inn employee told him that Arlene's medical expenses would be paid by the restaurant, but that the bills were not ever paid by Village Inn or American Blue Ribbon.

---

[11]  G. Michael Fenner, The Hearsay Rule 116 (3d ed. 2013).

[12]  *Id.*

- 163 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

[7] But this court has held that an error in the admission of evidence may be cured by an instruction from the court.[13] In this case, jury instruction No. 12 was also read to the jury:

> There has been evidence that the Defendant has not paid any of Plaintiffs' medical bills. The law of Nebraska is that a Defendant such as Village Inn has no duty to pay medical bills of Arlene Pantano unless and until there has been a determination that the Defendant was negligent or breached a duty owed to Arlene Pantano.

Indeed, instruction No. 12 was drafted by counsel for American Blue Ribbon and was the suggested cure for the error of the erroneous admission of Ross' testimony. There is no merit to this assignment of error.

*Liability of American Blue Ribbon.*

American Blue Ribbon does not specifically assign that the district court erred in finding sufficient evidence to support the jury's finding of liability. But it does argue as much in its discussion of its assigned errors of the court's denial of summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial.

In any case, American Blue Ribbon's contention is without merit, because there was evidence to support the jury's finding of liability. First, Karyl and Marilou both testified that Arlene told them that she tripped over the entryway rug at the Village Inn and that, in the words of Marilou, the rug was "buckled." As noted above, Arlene's statements are admissible hearsay under the excited utterance exception.

In addition, Ross testified that as Arlene was getting loaded into an ambulance, a Village Inn server wearing a name tag with the name "Makenzie" told him that she had tripped on the entryway rug twice that morning. Though American Blue Ribbon objected at trial on the basis that the server's

---

[13] *Olson v. City of Omaha*, 232 Neb. 428, 441 N.W.2d 149 (1989).

statement was inadmissible hearsay, they did not clearly assign and argue that admission as error on appeal. There was sufficient evidence that American Blue Ribbon was negligent, and thus there is no merit to American Blue Ribbon's assignments of error regarding the denial of its motion for directed verdict, for judgment notwithstanding the verdict, and for new trial.

*Remaining Assignments of Error.*

American Blue Ribbon has also alleged various other assignments of error, all of which are without merit.

First, American Blue Ribbon contends that the district court erred in denying its motions in limine, specifically arguing that the estates failed to disclose witnesses, and for that reason the testimony of those witnesses should be stricken.

[8,9] A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.[14] It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence.[15] Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.[16] Thus, by assigning only that the court erred in denying its motions in limine, American Blue Ribbon has failed to preserve those arguments on appeal.

Moreover, American Blue Ribbon simply argues that certain witnesses were not disclosed and that their testimonies should be stricken. But American Blue Ribbon does not identify in its brief which witnesses were not disclosed. It is not the job of this court to search the record to find error. There is no merit to this assignment of error.

---

[14] *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990).

[15] *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995).

[16] *McCune v. Neitzel, supra* note 14.

- 165 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
PANTANO v. AMERICAN BLUE RIBBON HOLDINGS
Cite as 303 Neb. 156

[10] American Blue Ribbon also assigns that the district court erred in denying its motion for summary judgment. But the denial of a motion for summary judgment is not a final order reviewable on appeal,[17] and as such, this assignment is without merit.

Finally, American Blue Ribbon also argues, though does not assign, that the district court erred in allowing Ross to testify regarding the effect that Arlene's fall had on her dementia. Because this was not specifically assigned as error, we will not address that contention further.

*Comparative Negligence.*

In its cross-appeal, the estates contend that the district court erred in overruling their motion to strike, instructing the jury on comparative negligence, and including comparative negligence on the verdict form, because American Blue Ribbon failed to offer any evidence that Arlene was negligent.

In response, American Blue Ribbon argues that the estates did not prove that it was negligent and further asserts that Arlene's age, dementia diagnosis, and preexisting medical conditions were such that "could reasonably lead a fact-finder to conclude [that Arlene] was at fault for her fall."[18]

[11,12] Establishing that an accident has occurred does not prove a case of negligence.[19] Negligence is not presumed and must be proved by evidence, direct or circumstantial.[20] Nothing American Blue Ribbon directs us to shows that any action by Arlene was negligent. As the estates argue, there is no suggestion that Arlene was not wearing her glasses or shuffling her feet or that she did not look where she was going. Nor was there evidence that due to her age and health, Arlene should

---

[17] See *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999).

[18] Reply brief for appellant at 28.

[19] *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

[20] *Id.*

have known to use a wheelchair or a walker. In short, there is no evidence supporting a conclusion that Arlene was negligent. We accordingly find that the estates' assignment of error on cross-appeal has merit.

Having found that the cross-appeal on the issue of comparative negligence has merit, we conclude that the district court erred in instructing the jury with regard to comparative negligence and in providing a verdict form allowing for a deduction for Arlene's negligence. The judgment in favor of the estates should not have been reduced by 25 percent, and we therefore modify the judgment to $260,000.

## CONCLUSION

The decision of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

MILLER-LERMAN, J., not participating.